Next case will be 081140, Excelsior Technology v. Papst Licensing. 081140, Excelsior Technology v. Papst Licensing. 081140, Excelsior Technology v. Papst Licensing. Good morning, your honors. I'd like today to explain why it is that the district court had subject matter jurisdiction in this case. Let me ask you, I want to make sure I understand your contention here. As I understand it, the argument is that your client was improperly paid or was forced to pay a royalty that had already been paid under the Hitachi license, under the Papst Hitachi license. Hitachi paid the license and your client, Excelsior, duplicated that license, right? That's correct, your honor. And there's a provision in the contract that seems to cover that. Why isn't this just a plain breach of contract action? That seems the simplest thing. Why don't you just go and say, look, you breached the contract by collecting from my client a royalty that you had already collected from Hitachi. I mean, that seems to be so clean and neat and straightforward. Why all this stuff about the, you know, exhaustion doctrine? Why don't you just go and breach a contract? That's a very good point, your honor. And I think the answer to that, and I risk providing a little bit of advantage to the opposing party, but I will explain that from the beginning, Papst's argument has been that there is a carve out provision in the Hitachi agreement. And that carve out provision basically excludes our hard drives. And so our belief was that the patent exhaustion doctrine would be a better response to that carve out provision, because regardless of what the parties agreed or Hitachi and Papst agreed to carve out, they could not, that is, Papst could not violate the patent exhaustion doctrine. Patent exhaustion doctrine, though, is a defense. It's a defense to a claim to infringement. It's not an affirmative basis for a claim. If I license you to something, you pay me royalty. And I license someone else who sells to you, and you pay them a royalty, and I get part of it. In the absence of this contractual provision, there's nothing unlawful about my collecting two royalties in the absence of either a contractual issue or an infringement claim. I mean, that's not an affirmative basis for a federal action. It's a defense. Your Honor is correct in general. However, the facts of this case show that we can use it in an affirmative way. And perhaps let me explain by way of background. In 2002, Papst actually brought suit against Excel Store for patent infringement, covering basically the same hard drives at issue here, the same patents at issue here. And as a result of that lawsuit, Papst and Excel Store signed the licensing agreement in January of 2004, which basically settled that lawsuit. Now, that whole time, Papst was telling Excel Store, you owe us these royalties. You need to settle this case. And so we entered it in on that basis. Obviously, Your Honors, that was not true. The hard drives that were covered by the Excel Store-Papst agreement are also covered by the Hitachi agreement, which was effective January 1, 2003. We signed and made our agreement effective January of 2004. So what? So what? You're covered, and of course, paying twice. Basically, Your Honor. But you've got this contractual provision that says you shall not pay twice. So there's an information requirement there. And that's a contractual claim. I agree, Your Honor. Maybe I have two responses. One is that basically our contention is that Papst committed fraud in continuously telling us that there would be and was no violation of the patent exhaustion doctrine. The second response is, Your Honor's right. We could bring a claim saying that they have violated the provision in the agreement that says they shall not double pay, or they will reimburse us if they do. But again, they argue that there's this carve-out provision in the Hitachi agreement which excludes. That would be a defense to that argument. And so the patent exhaustion doctrine actually provides us in a way a better response to that carve-out provision, Your Honors. And so let me also, Your Honors, get to the declaratory relief cause of action as well. We've discussed the fraud and the breach of contract claims a little bit. As Your Honors are aware, whether or not there is subject matter jurisdiction over a declaratory relief action depends not on the contours of the declaratory relief action itself, but on the coercive claim that the defendant might have brought, or the declaratory relief defendant might have brought. And it is clear here that Papst could have brought a patent infringement claim as its coercive claim. Now, Papst's response to that is to say, well, no, we can't bring a patent infringement claim because if we were to terminate the agreement with Excel Store, you would be covered under the Hitachi agreement. And so we could not bring a patent infringement claim. There are several problems with that argument, Your Honors. The first problem with that argument is that Papst is basically saying, if we were to bring a patent infringement claim, there would be no subject matter jurisdiction because you, Excel Store, have a defense based on licensing. However, the case law is clear that subject matter jurisdiction cannot be determined with respect to a defense. In other words, if I have a valid federal claim, patent infringement, the fact that there is a state law defense licensing does not divest the federal courts of jurisdiction. Secondly, Your Honors, it is not at all clear that the defense based on the Hitachi agreement is as ironclad as Papst would like the court to believe. As I mentioned before, there is this carve-out provision. And in fact, from beginning to end, Papst has argued to Excel Store that this carve-out provision specifically carves out the Excel Store hard drives from the Hitachi agreement. In other words, Papst's position has always been that the Excel Store hard drives are not covered by the Hitachi agreement. I think it's awkward to say the least to now argue, well no, if we brought a patent infringement claim, the Excel Store hard drives would be covered by Hitachi. And I think that kind of gets to the problem with going as deeply into the merits as Papst would like this court to do. The court should not be delving into the merits of a hypothetical claim, especially at this early stage, especially when it can't receive proper guidance from the parties, because we would both be in awkward positions. Papst is arguing, we can't bring patent infringement because you have a valid defense. We, Excel Store, argue, oh no, no, you have a valid defense. That's very awkward. The court should not be delving into the merits in that way. It is enough, Your Honors, to say here that Papst would have a patent infringement claim in this case if Excel Store were to stop paying royalties on the basis of patent exhaustion. And that would be enough to get subject matter jurisdiction over the declaratory relief cause of action. Now, with respect to the fraud claim, as I noted before, Your Honors, the fraud here is fraud with respect to a representation made as to the patent exhaustion doctrine. The requirement is that one element of the fraud claim require a federal element. Obviously, Your Honors, misrepresentation is a necessary element of the fraud claim. And in order to prove misrepresentation here, Your Honors, we basically have to show two things. One, Papst made a representation with respect to patent exhaustion, or it materially omitted to make a statement with respect to patent exhaustion. And then two, the fraud claim certainly sounds like a state court action, doesn't it? No, Your Honor. In this case, we would have to show not only that they made the statement, but that the statement was false. And the only way to show that the statement was false is to show that they violated the patent exhaustion doctrine. And so this case is on all fours with that. How does it show they violated the patent exhaustion doctrine? Wouldn't it simply be that they collected, you know, as you say, breached the contract by collecting double royalties? It's more than that, Your Honor. It seems that this case is more complicated than it has to be. It's just a basic contract claim. Just go and sue and breach a contract. I understand, Your Honor. I mean, it just seems somebody's trying to make the case overly complex, it seems. You have a contract provision. It says X. You say it was breached. Go and sue. Why all this other stuff? I think that there are serious concerns about the representations that were made to Excel Store even before we got into the agreement. We can raise that in the contract, actually, in state court, as Judge Lurie was suggesting. We could, Your Honor. However, again, we are quite concerned about that carve-out provision. Well, we'll see what happens. I mean, it's just a straight breach of contract claim. Yes, Your Honor. I just don't understand why there's all of this making it more complicated, all this stuff about patent exhaustion. Just go sue and breach a contract or settle it with them. I think, Your Honor, that the patent exhaustion aspect actually really gets to the heart of this claim in a way that the breach of contract, the straight breach of contract, or the pure state fraud claim really doesn't get to it in the same way, Your Honor. I think that in some ways it's actually more complicated if you do it with the state claim only because then you get into issues of the carve-out provision and what does that mean. And to be honest, Your Honor, it took us a long time to ferret out how that would all play out. I think it was quite complicated because the carve-out provision says that it carves out hard drives that were covered at the time that they were sold. You're saying that you'd have to get into this carve-out slash patent issue in a breach of contract action? We would absolutely have to get into the carve-out provision. I think that that is one of PAP's main defenses to any breach of contract claim with respect to whether or not they were required to reimburse us for royalties, Your Honor. And so in this case, Your Honors, they have to show misrepresentation. And in order to show misrepresentation, we have to show the falsity of the representation, i.e. that the patent exhaustion doctrine was violated. And that is where the analysis below should have ended. It was enough just to say we will need to get to patent exhaustion in order for plaintiff to prevail. The district court erred by going one step further. And it basically said, well, I don't see that there is a representation here. Now that was going to the merits. And it said, I don't see that there was any representation as to patent exhaustion. Therefore, plaintiff, you lose. Therefore, I don't need to get to the patent exhaustion doctrine. Therefore, there's no subject matter jurisdiction. That was erroneous. In the same way it would be erroneous for the district court to say, for example, plaintiff, you will lose on this claim. Therefore, you will receive nothing. And therefore, the amount in controversy requirement is not met. It's completely erroneous for the district court to go to the merits of this case. All it needs to do is to determine whether or not the patent exhaustion doctrine is an element. It doesn't matter whether or not, at the end of the day, we will prevail. And in fact, that's exactly our point, Your Honors. It is the plaintiff's prerogative to decide how they will plead and the venue that they will choose to plead in it. Why don't we save the rest of your time? You're in your rebuttal now, unless you want to use it all up. Your Honor, I will then reserve my rebuttal time. Thank you. Mr. Friedman? Thank you. Good morning. May I please the Court? I want to address the declaratory judgment aspect of this first. Mr. Vu suggested that the defense that they would have would work just for them just as well as it works in our argument. And the answer is that that's not really true because the declaratory judgment has to be based on a realistic claim. And a realistic claim has to be one that we could really make. The idea that a patentee has the alternatives available to him in the case where the licensee doesn't pay the royalties of pursuing breach of contract or pursuing patent infringement is that if he pursues patent infringement, he's treating the accused products as not being licensed at all. If you look on page 19 of Excel Store's initial brief, they quote all the authorities there on why it is that the patentee can sue for patent infringement in this circumstance. In each one, it demonstrates that the conceptual underpinning of that claim by the patentee is that the license is not there anymore. It's that the license is, in one case, according to the Supreme Court, that the patent infringement claim is really an acquiescence in the licensee's renunciation of the license. Mr. Friedman, is an asserted violation of the patent exhaustion principle a basis for a federal claim? No, Your Honor. Tell us why not. Like you said earlier. Tell us why not. Because it's a defense. It's not a cause of action. Isn't that your case? Isn't that your defense? Isn't that your argument for affirmance? In part, yes, Your Honor. Just in part? I lost my train of thought, I'm sorry. The declaratory judgment... I forgot what I was saying before. That the declaratory judgment... That the reason why PAPS could... The hypothetical claim that PAPS could bring that's being anticipated by the declaratory judgment action could only be a breach of contract because, in this particular case... Now, the Excel Store contract itself would cover drives, not just the drives that Excel Store makes as a foundry for Hitachi. But the only drives that are the subject of this lawsuit are the ones that Excel Store makes as a foundry for Hitachi. And those particular drives, if they were being treated as not licensed because PAPS chose to pursue a patent infringement action, if they were being treated as not licensed under the Excel Store contract, then because of the language in the Hitachi contract, they would be licensed under the Hitachi contract. That's what a patent license is. It's protection against patent infringement liability. So the idea that you could have a declaratory judgment action anticipating a patent infringement action doesn't make any sense if there's no patent infringement liability. And Excel Store concedes on page 2 of its reply brief that the drives that are an issue would be licensed either under the Hitachi contract or under the Excel Store contract. So therefore, there could not be any anticipated claim by PAPS for infringement. And indeed, in the complaint, there was never any anticipated claim by PAPS for infringement. That wasn't the theory until they came up on appeal. With respect to the state law claims, I want to point out that the district court got it precisely correct. The district court said, and as your honors have said during Mr. Vu's argument, this is just a breach of contract. You could just present evidence on breach of contract without ever mentioning patent law, without ever mentioning first sale doctrine. You could just present that kind of evidence. If you've got a favorable claim interpretation and favorable view of the evidence by the court, you could prevail on your breach of contract. You could prevail on your fraud. Look at paragraph 64 of the complaint on page 87 of the appendix. And while there's always language in this complaint about first sale doctrine everywhere, what the complaint is alleging is that Excel Store relied on PAPS misrepresentations by relying on PAPS assurances that were contained in the quarterly letters that were required by paragraph 4.6 of the Excel Store contract. And if Excel Store could prove that those letters were inaccurate and misled them, and that they relied on it to their detriment, they've proved their fraud case. It's fairly encompassed within the complaint. And the district court below said, I don't have to deal with first sale doctrine. They could prove their fraud, and I don't have to deal with fraud and the inducement. I could deal with it just the way they've alleged it. They've alleged a lot more, but it's certainly fairly encompassed within the complaint. That plain old vanilla fraud is included in their complaint, just a plain old breach of contract is included in their complaint. And then under the Christensen test, that's all that's necessary. The fact that there could be other theories on which they might prevail which would involve patent law, that's not the test under Christensen. The test under Christensen is whether there's any theory on which they could prevail which would not involve the patent law. And if that's the case, then the claim arises under state law, and there's no federal jurisdiction. Let me ask you please a question, and I meant to ask Mr. Vu this. It's really more in the nature of a housekeeping matter, but I guess there's some importance to it. Both the briefs, well all three briefs, the blue brief, the red brief, and the reply brief, and the appendix have lots of material that's marked confidential. And it seems to be significant portions, for example, of the red brief dealing, of the blue brief dealing with facts and so forth. Are the parties still maintaining that that material is confidential? Because it could make it difficult to write any kind of a meaningful opinion that explains why the court is either affirming or reversing. Because you have to get into the facts, yet we're told that the facts are confidential to a large extent. I think I can speak to this. I think that Accel Store's position is they don't really care about any of this, and PAPS has always maintained that it has obligations to maintain the contracts in confidence. So in other words, it's Mr. Vu who has claimed that a statement of a principle of patent law, or that PAPS is the patent holder, or Accel Store brought suit alleging four causes of action. All of these things are fact. It is he that claimed that this was confidential, not your party. No, I didn't say that, Your Honor. I said that Accel Store's position is they didn't really care. I represent PAPS. PAPS' position has been that the contents of the agreements, and particularly in this case we're dealing with a third-party agreement also, are confidential. That's your client's position? Yes, Your Honor. How can we write an opinion then in the case? Because we have to be secretive. I'm not being facetious. I understand what you're saying. In order to decide this case one way or the other, you have to explain why you're deciding it a particular way. In order to do that, it seems to me you have to explain the contract provisions. What do we do? Well, I think that while we've maintained the confidentiality in our briefs, it's certainly in our briefs. But facts are not confidential. The fact of bringing a suit alleging certain causes of action is a matter of public record. Why is that claimed to be confidential? I think that I was selective in my brief. Seven pages in a row, everything labeled confidential is not being selective. That's not my brief. You're saying, Mr. Friedman, that... I think Judge Lurie is correct in terms of the blue brief. There are a lot of seemingly innocuous things there. But you're saying, nevertheless, that it's your position that the provisions of the Pabst-Exelstor license agreement are confidential. Right? Yes, Your Honor. But what are we to do then? I mean, do you see the problem? I understand the problem. I don't see how anyone can author a meaningful opinion if they can't explain why they're coming to a particular conclusion. And to do that, you have to say, all right, this provision says this, hence the result flows. I mean, can we go ahead and write a proper opinion? Are you still maintaining your position? You see the problem here. I see the problem, Your Honor. Judge DeAgan, the district court judge, seems to have written an opinion, but he skirted getting into the Hitachi contract very much. But no, we have to get into the Pabst-Exelstor contract. I mean, can we go ahead and say what these provisions are? Are you insisting that we keep them confidential? Well, I'm certainly not insisting on that with respect to the Exelstor contract, except, I assume, the specific numbers. Well, we can ask Mr. Vu, too. I mean, it just struck me, and I'd forgotten before, but there's so much that's labeled here, it makes it difficult to do our job. With respect to the, except for the specific numbers, I don't think it's going to be very much confidential in there. Can we say, are we creating, can we then say, all right, the Pabst-Exelstor contract says in Clause 4.3 this, or Clause 2.4. Is that a problem? Well. It seems to me it's a pretty simple yes or no answer. I mean, we've got a difficulty here if we can't explain the decision. Well, do you have an answer? The problem I'm having, Your Honor, is that I don't really have authority to remove the confidentiality from these contracts. Okay. That sounds like a sufficient answer. Do you have anything more to say on your merits? I did want to cover one other point, Your Honor. And this was something that hasn't come up in Mr. Vu's argument, but it was raised in their brief the first time. And this was their third argument where they seemed to create some new non-statutory category of federal jurisdiction. I think that they've misread those cases that they rely on when they're talking about federally mandated contracts, suggesting that even if a contract does not arise under federal law, that there somehow could be federal jurisdiction. I think what the court cases that they're relying on are really saying is that in some cases, that the enforcement of private contracts would arise under federal law in certain circumstances, specifically because that's what Congress intended. And the Jackson case in which they relied wasn't one of those cases. In the Jackson case, the Sixth Circuit was reversed. The Supreme Court said that there was no federal jurisdiction in that case. And that's why the Sixth Circuit was reversed. Excel Store is quoting from a footnote in the opinion where the court said, well, sure, the complaint alleged a violation of a federal statute, and therefore there's federal jurisdiction, strictly speaking. But then they omitted the last sentence of the footnote, which explained that what the Supreme Court was saying was that there was jurisdiction to deal with the motion to dismiss. And then the rest of the Supreme Court opinion went on to explain why there was no federal jurisdiction in that case, because Congress did not intend that this federally mandated contract that was mandated by the statute that included specific protections that were then put in the contract still did not arise under federal law, and that's why there was no federal jurisdiction in that case. The suggestion that Excel Store is making is that, in effect, every patent license agreement would be the enforcement of every patent license agreement would arise under federal law. They're suggesting that it's mandated by federal law because it involves patents. Your time has expired, sir. Thank you very much. Would it be much of a problem for you to secure your client's views on the waiver of confidentiality and file a document in this court within 10 days as to the position on any items that need to remain confidential? Of course, Your Honor. Maybe a joint letter. Well, we're going to see in a minute whether Mr. Vu agrees with Mr. Friedman that he doesn't care about any of it. If he does care about some of it, then it should be okay. I didn't mean to speak for Mr. Vu, but we've had conversations there. Okay. Mr. Wilson and I have had conversations. Before we finish today, we'll announce what we'll be doing, okay? Yes, Your Honor. Mr. Vu, is it correct that you're indifferent to the confidentiality of the briefs and record? Yes, that's absolutely correct, Your Honors. It was PAP's position that the provisions of the agreement were confidential, and we do apologize if in an abundance of caution we marked great portions of the brief confidential, but it would look bad if we were to be sued by PAP for breaching the contract in the middle of this lawsuit. And so we did it out of an abundance of caution. I apologize if it causes inconvenience for Your Honors. And also to answer Judge Schall's question, whether or not you can write an opinion without dealing with the confidentiality agreement, the answer is absolutely yes, and you can do that basically by reading the complaint the way that we have written it, not the way that the district court rewrote it. The way that we wrote the complaint, our claims don't have a whole lot to do with the contract other than as background material. And so if you read the complaint the way we wrote it, and the complaint is about patent exhaustion and not about the licensing agreements, you don't have to get into the details of the licensing agreement. And if we don't, do you still care about the confidentiality? No, Your Honor, we don't. We would agree to whatever PAP's would like to do. Let me then get to a response of some of the points made by Mr. Friedman. Mr. Friedman noted that there has to be a realistic claim with respect to the declaratory relief action. That is, in fact, not correct. The standard only is that the claim not be frivolous. And in this case, the coercive claim of patent infringement that they would bring in response to the declaratory relief action is far from frivolous. His only defense is one that they have disclaimed from beginning to end, that the Hitachi Agreement would cover our hard drives. So it would be hardly frivolous when the ironclad defense that Mr. Friedman posits is directly contrary to the position that PAP's has taken from beginning to end. In addition, Your Honors, let me respond to a point that Judge Lori made with respect to Mr. Friedman's argument, and that is, is patent exhaustion just a defense? And Your Honors, correct, it is a defense. However, a defense can be used as an element of a fraud cause of action. This court in the additive controls case, which we cited, allowed exactly that. This court in the Hunter Douglas v. Harmon case allowed exactly that, a defense to be used as part of a fraud cause of action. Now, I concede, Your Honors, that the way that we have pled this complaint is unusual, and it may be counterintuitive, as I believe it is for you, Judge Schall. However, that is the burden that we have taken on. This is not just a pleading game. At the end of the day, we will have to prove what we have pled. And if we cannot prove those things, then we will lose. We are bound by the way that we have pled, which is why the court has been consistent in saying that we can plead in a way that we choose, not the way the district court chooses to rephrase our pleadings. Our pleadings don't go to the contract, specifically, merely as background information. All right, sir. I apologize, Your Honor, if I could make one final point, and I will submit on that basis. The final point I would make, Your Honors, is that this issue was presented to the district court just one time, and the district court did not grant leave to amend. We ask that if the court is— That's a new argument, and it's in your briefs. Your time has expired. Thank you. Thank you, Your Honor. The case is submitted.